# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| JAMIE A.,[1] | : | Case No. 3:23-cv-00238 |
| Plaintiff, | : | |
| | : | District Judge Thomas M. Rose |
| vs. | : | Magistrate Judge Caroline H. Gentry |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

---

## REPORT AND RECOMMENDATIONS[2]

---

Plaintiff filed an application for Supplemental Security Income (SSI) on November 9, 2015. Plaintiff's claim was denied initially and upon reconsideration. After a hearing at Plaintiff's request, an Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. After the Appeals Council denied Plaintiff's request for review of that decision, Plaintiff filed an action with this Court.[3] The Court remanded the case to the Commissioner under Sentence Four of 42 U.S.C. § 405(g). The Appeals Council remanded the case pursuant to the District Court's order. A different ALJ held another

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

[2] *See* 28 U.S.C. § 636(b)(1). The notice at the end of this opinion informs the parties of their ability to file objections to this Report and Recommendations within the specified time period.

[3] Assigned to the undersigned Magistrate Judge, Case Number 3:20-cv-00178.

hearing and concluded that Plaintiff was not under a "disability" as defined in the Social Security Act prior to January 22, 2020, but that she became disabled beginning on that date. The Appeals Council denied Plaintiff's request for review of that decision, and Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the partially favorable decision. For the reasons set forth below, the undersigned Magistrate Judge recommends that the Commissioner's decision be AFFIRMED.

## I. BACKGROUND

Plaintiff asserts that she has been under a disability since the SSI application date of November 9, 2015. At that time, she was thirty-six years old. Accordingly, Plaintiff was considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. § 416.963(c). Plaintiff has a "high school education and above." *See* 20 C.F.R. § 404.1564(b)(4).

The evidence in the Administrative Record ("AR," Doc. No. 7) is summarized in the ALJ's decision ("Decision," Doc. No. 7-11 at PageID 1394-1441), Plaintiff's Statement of Errors ("SE," Doc. No. 9), the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 11), and Plaintiff's Reply Memorandum ("Reply," Doc. No. 12). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## II.     STANDARD OF REVIEW

The Social Security Administration provides SSI to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different

conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## III.    FACTS

### A.    The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in

the Social Security Regulations. *See* 20 C.F.R. § 416.920. The ALJ made the following findings of fact:

Step 1: Plaintiff has not engaged in substantial gainful activity since November 9, 2015, the SSI application date.

Step 2: She has the severe impairments of degenerative disc and joint disease of the cervical, thoracic, and lumbar spines with sciatica and sacroiliitis; degenerative joint disease of the shoulders with left rotator cuff tendonitis; headaches; obesity; asthma; a depressive disorder; a bipolar disorder; and an anxiety disorder with panic.

Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Prior to January 22, 2020, her residual functional capacity (RFC), or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consisted of light work as defined in 20 CFR § 416.967(b), subject to the following limitations: "[Plaintiff] could occasionally climb ramps and stairs. She should avoid climbing ladders, ropes, or scaffolds. She could occasionally stoop, kneel, crouch, crawl. She could have occasional exposure to concentrated irritants such as dust, odors, fumes, and other pulmonary irritants. [Plaintiff] could have occasional exposure to humidity and extreme heat and cold. She should avoid exposure to workplace hazards such as unprotected heights or dangerous, unprotected moving mechanical parts. She should avoid balancing as defined by the SCO. [Plaintiff] could occasionally push/pull with the left lower extremity. [Plaintiff] could perform simple, routine tasks but not at a production rate pace, such as one has with assembly line work. She could tolerate occasional interactions with supervisors and coworkers, and should avoid interaction with the public, where interactions would be limited to the straightforward exchange of information, without negotiation, persuasion, conflict resolution, close teamwork, tandem work, or over the shoulder supervision. [Plaintiff] could tolerate occasional changes in duties and the work setting."

Since January 22, 2020, her RFC has consisted of sedentary work as defined in 20 CFR § 416.967(a), subject to the following limitations: "[Plaintiff] could occasionally climb ramps and stairs. She should

5

avoid climbing ladders, ropes, or scaffolds. She could occasionally stoop, kneel, crouch, crawl. She could have occasional exposure to concentrated irritants such as dust, odors, fumes, and other pulmonary irritants. [Plaintiff] could have occasional exposure to humidity and extreme heat and cold. She should avoid exposure to workplace hazards such as unprotected heights or dangerous, unprotected moving mechanical parts; no balancing as defined by the SCO. She could occasionally push/pull with the left lower extremity. [Plaintiff] could perform simple, routine tasks but not at a production rate pace, such as one has with assembly line work. She could tolerate occasional interactions with supervisors and coworkers and should avoid interaction with the public, where interactions would be limited to the straightforward exchange of information, without negotiation, persuasion, conflict resolution, close teamwork, tandem work, or over the shoulder supervision. [Plaintiff] could tolerate occasional changes in duties and the work setting. She should avoid overhead reaching with the left upper extremity. Due to a combination of her deteriorating conditions and increased symptomology including reports of pain, as well as the need to alternate positions to alleviate symptoms/pain, [Plaintiff] would be off task 20% of the workday."

She has no past relevant work.

Step 5:    Prior to January 22, 2020, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could perform.

Since January 22, 2020, there have been no jobs in significant numbers in the national economy that Plaintiff can perform.

(Decision, Doc. No. 7-11 at PageID 1397-1429.) These findings led the ALJ to conclude that Plaintiff was not disabled prior to January 22, 2020 but has been disabled since that time. (*Id.* at PageID 1429.)

**B.    B.T. Onamusi, M.D.**

B.T. Onamusi performed a consultative physical examination in March 2009, several years prior to the current SSI application date. (AR, Doc. No. 7-7 at PageID 429-

31.) Dr. Onamusi diagnosed chronic neck and back pain "by patient's report" and a

history of bronchial asthma, which he noted was currently stable. (*Id.* at PageID 431.) Dr.

Onamusi opined that Plaintiff "should be able to function at least at [the] moderate

physical demand level." (*Id.*)

The ALJ gave this opinion "no more than little weight." (Decision, Doc. No. 7-11

at PageID 1415.) The ALJ explained that the examination predated the period at issue by

several years but that he had considered the report for historical purposes. (*Id.*)

### C. Denise Griffith, M.D.

Family physician Denise Griffith, M.D. completed a checkbox Physical

Impairment Assessment form in November 2015. (AR, Doc. No. 7-10 at PageID 1299-

1300.) Dr. Griffith indicated that Plaintiff could sit for four to six hours at a time, stand

and walk for fifteen minutes at a time and for a total of one to two hours per day, and lift

and carry no more than ten pounds. (*Id.* at PageID 1299.) Dr. Griffith opined that Plaintiff

was moderately limited in the ability to bend and perform repetitive foot movements.

(*Id.*) She indicated only minimal limitations in the areas of pushing, pulling, and

reaching. (*Id.*) Dr. Griffith also indicated that she expected these limitations to last for

only seven to nine months. (*Id.* at PageID 1300.)

Dr. Griffith subsequently completed a Medical Assessment Of Ability To Do

Work-Related Activities (Physical) form in September 2022. (AR, Doc. No. 7-19 at

PageID 2472-77.) Dr. Griffith noted that she had been seeing Plaintiff approximately four

times per year for the past twenty years. (*Id.* at PageID 2472.) She stated that Plaintiff

had "[m]edical [p]roblems" of low back pain with left-sided sciatica, mild and

7

intermittent asthma, seasonal allergies, left-sided rotator cuff tendonitis, GERD, depression, and irritable bowel syndrome. (*Id.*) Dr. Griffith opined that Plaintiff could lift and carry no more than five pounds, stand and walk for fifteen minutes at a time and for a total of thirty minutes in an eight-hour workday, and sit for ninety minutes at a time and for a total of three hours in an eight-hour workday. (*Id.* at PageID 2473-74.) According to Dr. Griffith, Plaintiff could never climb, balance, stoop, crouch, kneel, or crawl. (*Id.* at PageID 2474.) She indicated that Plaintiff's abilities for reaching, handling, pushing, and pulling were "affected." (*Id.*) Dr. Griffith also opined that Plaintiff's impairments and treatment would likely cause her to be absent from work more than three times per month, and that she would be distracted by pain or psychological distress for approximately two-thirds of an eight-hour workday. (*Id.* at PageID 2476.) When asked about environmental restrictions, Dr. Griffith indicated that Plaintiff should avoid heights, moving machinery, chemicals, temperature extremes, dust, fumes, and humidity. (*Id.*) Dr. Griffith concluded that Plaintiff was unable to perform light- or even sedentary-exertion work on a sustained basis. (*Id.* at PageID 2477.)

The ALJ gave "some weight" to Dr. Griffith's November 2015 assessment. (Decision, Doc. No. 7-11 at PageID 1416-17.) According to the ALJ, Dr. Griffith's opinion that the impairments and limitations would last no more than nine months equated to an opinion that Plaintiff's impairments were non-severe. (*Id.* at PageID 1416.) The ALJ concluded that portion of Dr. Griffith's assessment was inconsistent with other evidence showing that Plaintiff's back condition, obesity, headaches, shoulder degeneration, and asthma had lasted longer than twelve months. (*Id.* at PageID 1416-17.)

The ALJ also explained that he did not adopt Dr. Griffith's exertional and postural limitations verbatim. (*Id.* at PageID 1417.) The ALJ reasoned that Dr. Griffith's exertional limitations were not supported by the objective evidence, but that the examination findings of decreased strength in the left leg and reduced spinal range of motion, combined with Plaintiff's obesity and complaints of shoulder pain, warranted some exertional limitations. (*Id.*) Conversely, the ALJ explained that the combination of Plaintiff's impairments warranted greater postural and environmental limitations than assessed by Dr. Griffith. (*Id.*)

The ALJ afforded partial weight to Dr. Griffith's September 2022 assessment. (Decision, Doc. No. 7-11 at PageID 1425-26.) The ALJ reasoned that for the time period since January 22, 2020, the exertional, postural, and manipulative limitations that Dr. Griffith assessed were "more restrictive than the record objectively supports." (*Id.* at PageID 1425.) The ALJ cited examinations that generally showed normal strength in the extremities (with the exception of some examinations showing slightly decreased strength), no evidence of atrophy, and no nerve testing to confirm a sensory deficit. (*Id.* at PageID 1425-26.) The ALJ cited several other findings to support the need for the limitations in the RFC—but for less restrictive limitations than those assessed by Dr. Griffith. (*Id.*) The ALJ explained that he did not adopt Dr. Griffith's limitation for absenteeism because Plaintiff was "not involved in any treatment with a recovery period and was not seeking routine emergent treatment or treatment requiring extended stay hospitalization." (*Id.*) The ALJ further explained that although he did not include Dr. Griffith's off-task limitation verbatim, the off-task limitation in the RFC is supported by

9

"recurrent reports of needing to change position due to pain and numbness as well as recurrent reports of pain despite trying multiple treatment modalities support for off task symptomology." (*Id.*)

### C.     State Agency Medical Consultants

State agency medical consultant Gerald Klyop, M.D. completed a physical RFC assessment form at the initial level in May 2016. (AR, Doc. No. 7-3 at PageID 176-77.) Dr. Klyop opined that Plaintiff could lift and carry up to fifty pounds frequently and twenty-five pounds occasionally. (*Id.* at PageID 177.) He opined that Plaintiff could sit, stand, and walk for approximately six hours in an eight-hour workday. (*Id.*) Dr. Klyop also opined that Plaintiff needed to avoid concentrated exposure to pulmonary irritants such as fumes, odors, dusts, gases, and poor ventilation. (*Id.*) Robert Wysokinski, M.D. reviewed the updated record at the reconsideration level in November 2016. (*Id.* at PageID 205-06.) Dr. Wysokinski affirmed the limitations that Dr. Klyop assessed but suggested the following additional limitations: never climb ladders, ropes, or scaffolds; occasionally crawl; frequently climb ramps and stairs; avoid all exposure to hazards; and avoid concentrated exposure to extreme heat, extreme cold, and humidity. (*Id.*)

The ALJ afforded these assessments "no more than some weight" for the time period prior to the established disability onset date. (Decision, Doc. No. 7-11 at PageID 1418.) The ALJ reasoned that additional evidence submitted after the consultants reviewed the record warranted greater physical limitations. (*Id.*) The ALJ cited to lumbar and cervical spine imaging, physical examination findings, obesity, Plaintiff's reports of headaches and shoulder pain, and Plaintiff's history of asthma. (*Id.*) For the time period

10

since the January 22, 2020 disability onset date, the ALJ gave these assessments little

weight. (*Id.* at PageID 1425.) The ALJ again explained that the evidence obtained after

their assessments warranted greater limitations. (*Id.* at PageID 1424-25.)

### D. Mary Ann Jones, Ph.D.

Mary Ann Jones, Ph.D. performed a consultative psychological evaluation in

February 2009, over six years prior to the current SSI application date. (AR, Doc. No. 7-7

at PageID 418-23.) Dr. Jones diagnosed major depression, a panic disorder without

agoraphobia, and post-traumatic stress disorder. (*Id.* at PageID 422.) She assessed a

Global Assessment of Functioning score of 53, which indicated moderate symptoms. (*Id.*)

Dr. Jones opined that Plaintiff was moderately impaired in the abilities of: relating to

others; understanding, remembering, and following instructions; and withstanding the

stress and pressures associated with day-to-day work activity. (*Id.* at PageID 423.) She

opined that Plaintiff was mildly impaired in the ability to maintain attention,

concentration, persistence, and pace to perform simple, repetitive tasks. (*Id.*)

The ALJ assigned "no more than little weight" to this opinion. (Decision, Doc.

No. 7-11 at PageID 1415.) The ALJ explained that the examination predated the period at

issue by several years but that he had considered the report for historical purposes. (*Id.*)

### E. Ramakrishna Gollamudi, M.D.

Psychiatrist Ramakrishna Gollamudi, M.D. completed a Medical Functional

Capacity Assessment form for the Ohio Department of Job and Family Services (ODJFS)

in May 2011, over four years prior to the SSI application date. (AR, Doc. No. 7-10 at

PageID 1363.) Dr. Gollamudi checked boxes to indicate that Plaintiff was markedly

11

limited in the ability to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, interact appropriately with the general public, respond appropriately to changes in the work setting, be aware of normal hazards and take appropriate precautions, and set realistic goals or make plans independently of others. (*Id.*) Dr. Gollamudi indicated moderate impairment in all other areas of mental functioning that were listed on the form. (*Id.*) Dr. Gollamudi also checked boxes indicating that Plaintiff was unable to engage in any substantial gainful activity and that the limitations were expected to last for twelve months or more. (*Id.*)

The ALJ assigned little weight to Dr. Gollamudi's assessment. (Decision, Doc. No. 7-11 at PageID 1417.) According to the ALJ, Dr. Gollamudi indicated that he had only treated Plaintiff in Dr. Singh's absence and that he had last treated her in 2011, several years prior to the period at issue. (*Id.*) The ALJ noted that Dr. Gollamudi's opinion that Plaintiff was unemployable was an issue reserved to the Commissioner of Social Security. (*Id.*) The ALJ also explained that such an opinion was inconsistent with Dr. Gollamudi's indications of "generally moderate mental limitations" on the form, as well as the treating therapist's November 2015 assessment that suggested no more than moderate impairment. (*Id.* (citing AR, Doc. No. 7-10 at PageID 1297-98).)

### F.    Darrell Guest, L.I.S.W.

Therapist Darrell Guest, L.I.S.W. completed a Mental Impairment Assessment form in November 2015. (AR, Doc. No. 7-10 at PageID 1297-98.) Therapist Guest checked boxes to indicate his opinion that Plaintiff was moderately limited in all areas of mental functioning that were listed on the form. (*Id.*) He indicated that Plaintiff would

12

need to attend therapy appointments three times per month and that he expected the limitations to last for a year or more. (*Id.* at PageID 1297.)

Therapist Guest also completed a Mental Impairment Questionnaire in August 2022. (AR, Doc. No. 7-19 at PageID 2469-71.) He checked boxes to indicate his opinion that Plaintiff would be off task due to her physical and/or psychological problems for twenty percent or more of the workday and that she would be absent from work more than three times per month. (*Id.* at PageID 2469.) When asked to check boxes to indicate Plaintiff's limitations in areas of work-related activities, Therapist Guest placed an "X" on the line between the "moderate" and "marked" boxes for all of the areas on the form. (*Id.* at PageID 2470-71.) When asked to describe Plaintiff's overall ability to learn, recall, or use information to perform work activities, Therapist Guest placed an "X" on the word "moderate." (*Id.* at PageID 2471.) For the area of interacting with others, Therapist Guest marked an "X" in the blank next to "moderate." (*Id.*) He placed an "X" on the word "marked" for the areas of focusing attention on work activities, staying on tasks at a sustained rate, regulating emotions, controlling behavior, and maintaining well-being in a work setting. (*Id.*) When asked whether Plaintiff could perform regular, full-time, competitive work on a sustained basis without missing work more than twice per month, being off task more than fifteen percent of the time, or needing additional breaks, Therapist Guest check the "no" box. (*Id.*)

The ALJ afforded "some weight" to Therapist Guest's November 2015 assessment. (Decision, Doc. No. 7-11 at PageID 1416.) The ALJ reasoned that the opinion was "not entirely inconsistent with the evidentiary record supporting mental

13

health diagnoses with breakthrough symptomology during this period of time requiring medications and therapy intervention (Exhibits 12F; 13F; 14F; 17F; 18F)." (*Id.*) The ALJ explained that the treatment notes—that generally showed some anxious and depressed moods but with otherwise normal findings, as well as no emergent treatment or hospitalizations for symptom exacerbations or periods of instability—supported only Therapist Guest's opinions in the areas where he found "no more than moderate" limitations. (*Id.*) The ALJ also cited Plaintiff's ability to "remain[n] independent in her routine activities," maintain custody of her minor child, and manage her own medical care. (*Id.*)

In his evaluation of the time period since January 22, 2020, the ALJ gave partial weight to Therapist Guest's August 2022 assessment.[4] (Decision, Doc. No. 7-11 at PageID 1425.) The ALJ acknowledged that although Therapist Guest was not an "acceptable medical source," he had a "longitudinal mental health relationship" with Plaintiff. (*Id.*) The ALJ explained that the off-task limitation was not supported by Plaintiff's mental health symptoms alone, but was warranted by the combination of her physical and mental conditions. (*Id.*) He reasoned that the absenteeism limitation was unsupported because Plaintiff had "not required any treatment with a recovery period and has not required recurrent emergent treatment or hospitalization with extended[-] duration stay." (*Id.*) The ALJ also explained that Therapist Guest's opinion regarding adaptation was not fully supported by the lack of recurrent emergent treatment, the lack

---

[4] The ALJ cited to Exhibit 14F when evaluating Dr. Guest's assessment. (Decision, Doc. No. 7-11 at PageID 1425.) This citation appears to be a typographical error, as Exhibit **41**F contains Dr. Guest's August 2022 assessment. (AR, Doc. No. 7-19 at PageID 2469-71.)

14

of need for a structured living setting or hospitalization, and Plaintiff's continuing ability
to care for herself and her son. (*Id.*)

### G.    State Agency Psychological Consultants

State agency psychological consultant Karla Voyten, Ph.D., reviewed the record at
the initial level on June 27, 2016. (AR, Doc. No. 7-3 at PageID 174-75, 178-79.) Dr.
Voyten found "severe" impairments of an affective disorder and anxiety-related
disorders. (*Id.* at PageID 174.) She found that Plaintiff experienced mild impairment in
the "Paragraph B" area of activities of daily living, moderate difficulties in maintaining
social functioning, and moderate difficulties in maintaining concentration, persistence, or
pace. (*Id.*) She found no episodes of decompensation. (*Id.*) With regard to the mental
RFC assessment, Dr. Voyten opined that Plaintiff would have "periods of increased
anxiety" and "may require extra support on the job during these times." (*Id.* at PageID
179.) Dr. Voyten also opined that Plaintiff could interact appropriately with a small group
of coworkers but could not provide customer service to the general public and should not
supervise or resolve conflict on the job. (*Id.*) She opined that Plaintiff would need to have
changes explained in advance and implemented gradually, and that Plaintiff could travel
in unfamiliar places with a coworker but only "via non-public transportation." (*Id.*)

Cynthia Waggoner, Psy.D., reviewed the updated record at the reconsideration
level on February 28, 2017. (AR, Doc. No. 7-3 at PageID 202, 207-08.) Dr. Waggoner
essentially affirmed Dr. Voyten's assessment, except that she did not identify any
limitations regarding Plaintiff's ability to use non-public transportation. (*Id.* at PageID
208.)

The ALJ assigned partial weight to these assessments for the time period prior to January 22, 2020. (Decision, Doc. No. 7-11 at PageID 1419.) The ALJ explained that although the consultants found no limitations in the area of understanding, remembering, and applying information, Plaintiff's breakthrough mental health symptoms showed some limitation in this area and warranted the RFC restriction to simple, routine tasks. (*Id.*) The ALJ further explained that he did not adopt the consultants' opinion that Plaintiff might require extra support on the job during times of increased anxiety. (*Id.*) According to the ALJ, Plaintiff "required no significant assistance managing her routine household chores or managing her son," did not require a case manager or in-home assistance, and did not require emergency treatment or hospitalization during periods of increased anxiety. (*Id.*) The ALJ acknowledged that Plaintiff "would increase the frequency of her counseling sessions at times," but that she "was not requiring any daily intervention from any mental health provider" and "merely continued treating with conservative mental health treatment using medications and counseling intervention." (*Id.*) As for the consultants' opinions regarding social functioning and adaptation, the ALJ explained that he did not adopt the limitations verbatim but that their opinions were generally supported by the evidence that documented Plaintiff's anxiety when exposed to large groups, Plaintiff's repots of frustration and irritability, her need for routine counseling to work on coping skills, and Plaintiff's need for medication management with adjustments to her medications and dosages. (*Id.*) For the time period since the disability onset date, the ALJ gave these assessments little weight. (*Id.* at PageID 1425.) The ALJ explained that the

evidence obtained after their assessments warranted greater limitations. (*Id.* at PageID 1424-25.)

### H.    Darshan Singh, M.D.

Treating psychiatrist Darshan Singh, M.D. completed a Mental Functional Capacity Assessment form and a Basic Medical Form for the ODJFS in November 2016. (AR, Doc. No. 7-8 at PageID 847-51.) Dr. Singh referred to diagnoses of depression and anxiety and indicated that Plaintiff's health status was "poor but stable." (*Id.* at PageID 849-50.) Dr. Singh indicated moderate limitation in the following abilities: carrying out detailed instructions; sustaining an ordinary routine without special supervision; working in coordination with or proximity to others without being distracted by them; interacting appropriately with the general public; and being aware of normal hazards and take appropriate precautions. (*Id.* at PageID 847.) He indicated marked limitation in all other areas of mental functioning that were listed on the form. (*Id.*) Dr. Singh also checked a box to indicate his opinion that Plaintiff was unable to engage in any substantial gainful activity "for a continuous period of not less than nine months." (*Id.*)

Dr. Singh completed another questionnaire in July 2018. (AR, Doc. No. 7-10 at PageID 1365-67.) Dr. Singh referenced "medical problems" of depression, anxiety, and bi-polar disorder. (*Id.* at PageID 1365.) He identified signs and symptoms of sleep disturbance, mood disturbances, emotional lability, feelings of guilt and worthlessness, difficulty thinking or concentrating, decreased energy, manic syndrome, and generalized, persistent anxiety. (*Id.*) According to Dr. Singh, Plaintiff's overall condition was "poor but stable [with] therapy and medications." (*Id.*) Dr. Singh also indicated that Plaintiff

17

would likely be absent from work more than three times per month and that she would be distracted by her psychological symptoms for approximately two-thirds of an eight-hour workday. (*Id.* at PageID 1366-67.) When asked if Plaintiff would be able to perform full-time, competitive work over a sustained basis without missing work more than twice per month or being off task more than fifteen percent of the workday, Dr. Singh circled "yes." (*Id.* at PageID 1367.)

The ALJ assigned "no more than little weight" to Dr. Singh's November 2016 assessment. (Decision, Doc. No. 7-11 at PageID 1415-16.) The ALJ noted that Dr. Singh completed the form for the ODJFS, "whose rules and regulations are not synonymous with those of Social Security disability." (*Id.* at PageID 1415.) The ALJ also noted that Dr. Singh's opinion that Plaintiff could not engage in substantial gainful activity was an opinion reserved to the Commissioner of Social Security. (*Id.*) The ALJ explained that he did not give controlling weight to Dr. Singh's opinion and did not adopt his functional limitations verbatim because they were "inconsistent with and unsupported by his own treatment notes." (*Id.*) The ALJ cited normal examination findings that included normal grooming, normal speech, normal thought processes, appropriate thought content, no suicidal or homicidal ideation, no perceptual disturbances, grossly intact cognition, normal orientation, and good insight and judgment. (*Id.* at PageID 1415-16 (citing AR, Doc. No. 7-7 at PageID 818, 820).)

The ALJ gave little weight to Dr. Singh's July 2018 assessment. (Decision, Doc. No. 7-11 at PageID 1417-18.) The ALJ noted that Dr. Singh's opinions that Plaintiff would require three or more absences per month and would be distracted two-thirds of

the time were inconsistent with Dr. Singh's indication that Plaintiff would be capable of performing full-time, competitive work on a sustained basis. (*Id.* at PageID 1417.) The ALJ also reasoned that Dr. Singh's opinions regarding absenteeism and distractibility were inconsistent with the evidence of record, which showed Plaintiff "was not involved in treatment with a recovery period" and did not require emergency care or hospitalizations for extended mental symptoms or instability. (*Id.*) The ALJ explained that the severity of Dr. Singh's proposed limitations were overall inconsistent with the mental health records –which generally showed normal speech, an "okay mood," no suicidal or homicidal ideations, and only some report of situational stressors—as well as Dr. Singh's own treatment notes. (*Id.* at PageID 1417-18.)

### I.     Carlos Cheng, M.D.

Carlos Cheng, M.D. performed a consultative psychological evaluation in February 2017. (AR, Doc. No. 7-8 at PageID 854-60.) Dr. Cheng diagnosed an adjustment disorder with mixed anxiety and a depressed mood, as well as an unspecified depressive disorder. (*Id.* at PageID 858.) Dr. Cheng offered his opinion that the evaluation showed no difficulties in understanding or remembering instructions, or in the ability to maintain attention, concentration, persistence, and pace to perform simple and multi-step tasks. (*Id.* at PageID 859.) Regarding the ability to respond appropriately to coworkers and supervisors, Dr. Cheng noted that Plaintiff described "mild to partial impacts from current depressive and anxiety symptoms on sustained work performance." (*Id.* at PageID 860.) However Dr. Cheng opined that the overall evaluation showed no difficulties with critical supervisory feedback or in developing and maintaining

19

appropriate relationships with coworkers. (*Id.*) In the final area of responding appropriately to work pressures, Dr. Cheng noted that Plaintiff described "mild to partial current depressive and anxious symptoms that could compromise her ability to respond to sustained work pressures." (*Id.*) Yet Dr. Cheng reported that Plaintiff displayed appropriate responses and an average to adequate cognitive ability to manage work pressures, and he opined that she would have "no significant difficulties coping with changes in the work environment." (*Id.*)

The ALJ gave "no more than little weight" to Dr. Cheng's assessment. (Decision, Doc. No. 7-11 at PageID 1416.) The ALJ noted that Dr. Cheng "observed [Plaintiff] on one brief occasion." (*Id.*) The ALJ explained that additional evidence in the record, which included Plaintiff's "routine mental health treatment notes," Plaintiff's breakthrough symptoms, and her "need for routine medication management and counseling intervention" warranted more restrictions than Dr. Cheng assessed. (*Id.*)

## IV.     LAW AND ANALYSIS

Plaintiff contends that the ALJ's findings are not supported by substantial evidence. More specifically, Plaintiff asserts that the ALJ "impermissibly interpreted a critical body of objective medical evidence that was not reviewed by any medical source relied upon by the ALJ and substituted his interpretation of the medical data for that of [Plaintiff's] treating medical professionals and even the state agency psychologists." (SE, Doc. No. 9 at PageID 2510.) For the reasons discussed below, Plaintiff's assertions are not well-taken and the ALJ's decision should be affirmed.

### A.    Applicable Law.

A claimant's RFC describes the most she can do in a work setting despite her physical and mental limitations. 20 C.F.R. § 416.945(a)(1). The Social Security regulations, rulings, and Sixth Circuit precedent charge the ALJ with the final responsibility for determining a claimant's RFC. *See, e.g.,* 20 C.F.R. § 416.927(d)(2) (the final responsibility for deciding the RFC "is reserved to the Commissioner."); 20 C.F.R. § 416.946(c); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("[T]he ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an 'assessment of his [RFC]'"). When formulating the RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 416.945(a)(4). The ALJ must base the RFC on all relevant evidence in the record, including the claimant's descriptions of her limitations and symptoms, objective medical evidence, medical opinions, other medical evidence, evidence from non-medical sources, and prior administrative medical findings. *See* 20 C.F.R. § 416.945(a)(1)-(5).

As for the categories of medical opinions and prior administrative medical findings, because Plaintiff's claim was filed before March 27, 2017, the opinion evidence rules set forth in 20 C.F.R. § 416.927 apply. These regulations require ALJs to adhere to certain standards when weighing medical opinions. First, the ALJ is required to consider and evaluate every medical opinion in the record. *See* 20 C.F.R. § 416.927(b), (c). Further, "greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule."

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (citations omitted). The regulations define a "treating source" as a claimant's "own acceptable medical source who provides . . . medical treatment or evaluation and who has . . . an ongoing treatment relationship" with a claimant. 20 C.F.R. § 416.927(a)(1). The "treating physician" rule is straightforward: "Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014).

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson v. Comm'r of Soc. Sec*, 378 F.3d 541, 544 (6th Cir. 2004)).

"Separate from the treating physician rule, but closely related, is the requirement that the ALJ 'always give good reasons' for the weight ascribed to a treating-source opinion." *Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 552 (6th Cir. 2020) (citing 20 C.F.R. § 404.1527(c)(2); other citation omitted)); *see Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." (*Hargett*, 964

F.3d at 552) (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996))[5]. The goal is to make clear to any subsequent reviewer the weight given and the reasons for giving that weight. (*Id.*) Substantial evidence must support the reasons provided by the ALJ. (*Id.*)

As for medical opinions from sources that are not "treating sources" as defined in 20 C.F.R. § 416.927(a)(1), the ALJ must consider the following factors set forth for the evaluation of medical opinions: examining relationship; treatment relationship; supportability; consistency; specialization; and other factors. 20 C.F.R. § 416.927(c).

### B.     The ALJ's RFC Is Supported By Substantial Evidence.

Here, the ALJ provided reasonable explanations for why and how he weighed the medical opinions, and his conclusions are supported by substantial evidence. Plaintiff cites to several cases from districts in this circuit to support the assertion that the ALJ's decision is subject to remand because the ALJ made "a finding of work-related limitations based on no medical source opinion, or an outdated source opinion that did not include consideration of a critical body of objective medical evidence." (SE, Doc. No. 9 at PageID 2515 (citing *Kizys v. Comm'r of Soc. Sec.*, No. 3:10 CV 25, 2011 WL 5024866, at *1-3 (N.D. Ohio Oct. 21, 2011); *Colaner v. Comm'r of Soc. Sec.*, No. 12-cv-00716, 2013 WL 5487037, at *4 (S.D. Ohio Sept. 30, 2013) (Marbley, D.J.); *Banks v. Comm'r of Soc. Sec.*, No. 3:19-cv-307, 2020 WL 5757173, at *3 (S.D. Ohio Sept. 28, 2020) (Newman, D.J.)).) All of these cases are distinguishable.

---

[5] SSR 96-2p has been rescinded. However, this rescission is effective only for claims filed on or after March 27, 2017. See SSR 96-2p, 2017 WL 3928298 at *1. Because Plaintiff filed her application for benefits prior to March 27, 2017, SSR 96-2p still applies in this case.

The *Kizys* court concluded that the ALJ erred by finding "multiple severe impairments and impos[ing] an extremely restrictive residual functional capacity finding without the benefit of any medical source opinion as to work-related limitations whatsoever." 2011 WL 5024866, at *1. Similarly, the ALJ in *Colaner* "did not have 'any opinions from treating or examining physicians' to aid him in assessing [the plaintiff's] RFC." 2013 WL 5487037, at *3. The court found that because the ALJ determined the RFC "based on no medical opinion evidence," and instead interpreted "raw medical data," substantial evidence did not support the ALJ's determination. *Id.* at *4. In this case, by contrast, the ALJ reviewed and evaluated several medical opinions about Plaintiff's work-related limitations, which included assessments from the state agency medical and psychological consultants, a consultative physician, consultative psychologists, Plaintiff's treating primary care physician, Plaintiff's treating psychiatrist, and Plaintiff's therapist. And so these cases are not on point.

In *Banks*, the ALJ considered opinions from the state agency medical consultants, a one-time examining consultative physician, and the plaintiff's treating physician.[6] 2020 WL 5757173, at *3. However, the court pointed out that none of these sources had the opportunity to review lumbar spine MRI reports which "objectively verifie[d]" the plaintiff's back impairment. *Id.* The court concluded that substantial evidence did not support the ALJ's determination because the ALJ determined the RFC "without a medical opinion based on the entirety of the medical evidence of record." *Id.* at *4. In this

---

[6] The plaintiff only alleged errors related to his physical limitations. *Banks*, 2020 WL 5757173, at *2-3.

case, however, only the state agency medical consultants and the one-time examining consultative physician did not have the opportunity to review the lumbar and cervical spine imaging reports identified by Plaintiff. (*See* SE, Doc. No. 9 at PageID 2518.) Although treating physician Dr. Griffiths did not review this evidence when she provided her November 2015 assessment (AR, Doc. No. 7-10 at PageID 1299-1300), she did so by the time she provided her assessment in September 2022. (AR, Doc. No. 7-19 at PageID 272-77.) Similarly, the consultative psychologists and state agency psychological consultants only reviewed evidence dated through February 2017. But treating psychiatrist Dr. Singh provided an assessment in July 2018 (AR, Doc. No. 7-10 at PageID 1365-67), and Plaintiff's therapist completed a mental capacity assessment form in August 2022. (AR, Doc. No. 7-19 at PageID 2469-71.)

Nevertheless, Sixth Circuit precedent provides that the ALJ in this case was ***not*** required to obtain an updated medical opinion to evaluate the new medical evidence. Plaintiff cites to case law to support the contention that an ALJ is "not qualified to interpret raw medical data in functional terms." (SE, Doc. No. 9 at PageID 2517.) But the lumbar and cervical spine imaging reports that Plaintiff cites is not "raw medical data," because the raw medical data (the lumbar MRI, lumbar CT, and cervical spine x-ray) was read and interpreted by a radiologist. *See Robert D. v. Comm'r of Soc. Sec.*, No. 3:23-cv-001, 2023 U.S. Dist. LEXIS 115599, at *18 (S.D. Ohio July 5, 2023) (Jolson, M.J.), *report and recommendation adopted*, No. 3:23-cv-1, 2023 U.S. Dist. LEXIS 136552 (S.D. Ohio Aug. 4, 2023) (Rose, D.J.) (citing *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 726-27 (6th Cir. 2013) (finding no error where ALJ relied on radiologist's

interpretation of x-rays without the further assistance of a medical expert, stating that while the x-rays were raw medical data, the radiologist's report was not)). In fact, the MRI, CT, and x-rays themselves were not included in the record, and so the ALJ relied solely on the doctors' interpretations of this imaging. Because the new medical evidence was not raw medical data, the ALJ did not need a new medical opinion to evaluate that evidence and determine Plaintiff's RFC. *Robert D.*, 2023 U.S. Dist. LEXIS 115599, at *18.

Nor was the ALJ required to obtain a new medical opinion to evaluate Plaintiff's mental impairments. Plaintiff asserts that "[t]he absence of foundation in medical opinion evidence for the ALJ's residual functional capacity appraisal denotes a lack of substantial evidentiary support for [his] conclusions." (SE, Doc. No. 9 at PageID 2520; Reply, Doc. No. 11 at PageID 2543.) However "[t]he responsibility for determining a claimant's [RFC] rests with the ALJ, not a physician." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (citing 20 C.F.R. § 404.1546(c)). An ALJ is required to consider medical opinion evidence when determining the RFC, but he is not required to adopt them or adopt any such findings verbatim. *See Poe*, 342 F. App'x  at 156-57 (6th Cir. 2009). The ALJ's explanation shows that he relied on substantial evidence to support his conclusions when he evaluated the medical evidence, Plaintiff's subjective complaints, and the medical opinion evidence to formulate the RFC. Because the ALJ's RFC is within the permissible "zone of choice" and his findings are supported by substantial evidence, they must be affirmed. *Mullen,* 800 F.2d at 545.

Significantly, one of the cases that Plaintiff cites to in her Statement of Errors references another case from the Northern District of Ohio, and that case is most analogous to the case at hand. *Kizys*, 2011 WL 5024866, at *2 (citing *Henderson v. Comm'r of Soc. Sec.*, No. 1:08 CV 2080, 2010 WL 750222, at *1 (N.D. Ohio Mar. 2, 2010)). As the *Kizys* court pointed out, the ALJ in *Henderson* "used the three medical source opinions as a guide to peg a residual functional capacity finding," which is permissible under the case law in this circuit. 2011 WL 5024866, at *2 (citing *Henderson*, 2010 WL 750222, at *2). The *Henderson* court emphasized that the ALJ is charged with evaluating the evidence to determine a claimant's RFC and that "[the] Sixth Circuit has repeatedly upheld ALJ decisions where the ALJ rejected medical opinion testimony and determined RFC based on objective medical evidence and non-medical evidence." 2010 WL 750222, at *2 (citing *Ford v. Comm'r of Soc. Sec.*, 114 F. App'x 194 (6th Cir. 2004); *Poe v. Comm'r of Soc. Sec.*, 2009 WL 2514058, at *7 (6th Cir. Aug. 18, 2009)). In the same way, the ALJ in this case used the numerous medical opinions in the record "as a guide to peg a residual functional capacity finding." The ALJ provided good reasons—supported by substantial evidence—for the weight that he assigned to the opinions and for discounting the opinions of Plaintiff's treating sources. Likewise, the ALJ provided good reasons for concluding that a reduced range of light work accounts for the balance of the evidence prior to January 22, 2020, and he also recognized a need for additional limitations to account for evidence submitted after the consultants' assessments. The ALJ did not "improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding."

27

*Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x. 435, 439 (6th Cir. 2010). The ALJ's conclusions are supported by substantial evidence, and the applicable legal framework did not require him to do more.

In further support of her argument, Plaintiff challenges the ALJ's evaluation of the state agency psychological consultants' findings. (SE, Doc. No. 9 at PageID 2519.) Plaintiff asserts that the ALJ erred by failing to adopt the consultants' opinion that Plaintiff "would have periods of increased anxiety and may require support on the job during these times." (*Id.*) According to Plaintiff, the ALJ erred by relying on Plaintiff's reports that she was "purportedly able to perform household chores and routine daily activities, including 'managing her son during those times.'" (*Id.* (citing Decision, Doc. No. 7-11 at PageID 1419; *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *Cohen v. Sec'y of Dept. of Health & Human Servs.*, 964 F.2d 524, 530 (6th Cir. 1992); 20 C.F.R. § 416.972(c)).). But all of authority that Plaintiff cited is distinguishable from the current case.

The *Rogers* court found that the ALJ's description "mischaracterize[d] [the claimant's] testimony regarding the scope of her daily activities" and "fail[ed] to examine the physical effects coextensive with their performance." 486 F.3d at 248-49. However, the ALJ in that case described the claimant as "fairly active." *Id.*, 248. The ALJ in this case accurately characterized Plaintiff's daily activities and their effects, specifically their effects on Plaintiff's mental functioning. The ALJ accurately stated that Plaintiff "required no significant assistance managing her routine household chores or managing

her son during those times [of increased anxiety]." (Decision, Doc. No. 7-11 at PageID

1419.) Nor has Plaintiff alleged that the ALJ mischaracterized her daily activities.

In *Cohen*, the court noted that the ALJ's conclusions "were based **primarily** on the

evidence of [the claimant's] level of activities for the period in question, which the ALJ

found substantially undermined her credibility." 964 F.2d 524-28 (emphasis added). In

this case, the ALJ based her conclusion regarding the consultants' proposed limitation on

several additional factors, including the mental health treatment records. For example, the

ALJ cited the fact that Plaintiff "was not afforded a case manager and did not receive any

in[-]home assistance during periods of increased anxiety." (Decision, Doc. No. 7-11 at

PageID 1419.) The ALJ explained that Plaintiff "merely continued treating with

conservative mental health treatment using medications and counseling intervention."

The ALJ acknowledged that Plaintiff "would increase the frequency of her counseling

sessions at times," but that she "was not requiring any daily intervention from any mental

health provider" and did not require emergency room treatment, hospitalization, or a

structured living setting during periods of increased stressors. (*Id.*) The ALJ concluded

that Plaintiff "independently functions utilizing treatment modalities learned during

therapy and with medications." (*Id.*) The ALJ therefore considered Plaintiff's reports of

daily activities only as one additional factor in the analysis of the psychological

consultants' findings, which is consistent with 20 C.F.R. § 416.927(c).

*Bjornson*, too, is inapplicable here. The Seventh Circuit opined that the failure to

recognize the differences between activities of daily living and work activities "is a

recurrent, and deplorable, feature of opinions by administrative law judges in social

security disability cases." *Id.* But in this case, the ALJ did not directly equate Plaintiff's reports of daily activities with the ability to perform work activity. Instead, the ALJ considered Plaintiff's daily activities as only one factor in his consideration of the psychological consultants' findings.

Finally, 20 C.F.R. § 416.972 defines "substantial gainful activity." But the ALJ has not relied on Plaintiff's activities of daily living to show that she could sustain full-time work. As discussed above, the ALJ merely considered Plaintiff's daily activities as only one factor in his evaluation of the state agency psychological consultants' findings. The ALJ's evaluation of the consultants' findings is consistent with the applicable legal requirements and does not warrant reversal.

Plaintiff also challenges the ALJ's evaluation of Dr. Griffith's opinion regarding Plaintiff's physical functioning, but this challenge is also without merit. (SE, Doc. No. 9 at PageID 2519-20.) As discussed above, the ALJ gave "some weight" to Dr. Griffith's opinion. (Decision, Doc. No. 7-11 at PageID 1416-17.) Plaintiff cites the ALJ's statement that "the record supported greater physical limitation" during the period prior to the established disability onset date. (SE, Doc. No. 9 at PageID 2520.) According to Plaintiff, this statement "does not make sense because Dr. Griffith opined that [Plaintiff] was limited to standing and walking only one-to-two hours per day (and only [fifteen] minutes without interruption), and limited to lifting and carrying only five-to-ten pounds," while the ALJ's RFC limitations for light exertion were actually more physically restrictive than Dr. Griffith's opinion. (SE, Doc. No. 9 at PageID 2520; *see also* Reply, Doc. No. 12 at PageID 2543.)

30

However, Plaintiff challenges what appears to be a typographical error in the final sentence of the ALJ's analysis of Dr. Griffith's opinion, and it is a harmless error. Courts in the Sixth Circuit have held that a typographical or scrivener's error is harmless when the ALJ's meaning is clear in context. *Calkins v. Sec'y of Health & Hum. Servs.,* No. 85-5685, 1986 WL 17083, at *2 (6th Cir. May 7, 1986) (holding that the district court properly "examined the opinion as a whole to interpret the true meaning of the ALJ's findings" and was not required to "ignore the real finding of the ALJ and instead blindly follow the transcriber's version of the finding."); *Barnes v. Comm'r of Soc. Sec.,* No. 16-13714, 2018 WL 1474693 (E.D. Mich. Mar. 6, 2018) (finding that scrivener's errors were harmless because "the ALJ's true meaning is easily discernible for the analysis on each topic"); *Gomez v. Berryhill*, No. 3:18-cv-11738, 2019 WL 5680841, at *5 (E.D. Mich. June 11, 2019) (a typographical error did not require remand because context showed the ALJ's actual meaning).

In this case, the ALJ's intended meaning is clear. The ALJ first briefly summarized Dr. Griffith's November 2015 opinion in the opinion-evaluation section of the RFC analysis for the time period prior to the established disability onset date. (Decision, Doc. No. 7-11 at PageID 1416.) The ALJ addressed Dr. Griffith's opinion that the limitations that she assessed would be expected to last just seven to nine months. (*Id.* at PageID 1416-17.) The ALJ then stated that he did not adopt verbatim the exertional or postural limitations suggested by Dr. Griffith. (*Id.* at PageID 1417.) The ALJ specifically addressed Dr. Griffith's exertional limitations and explained that he did "not adop[t] the severity of the exertional limitations," but that he limited Plaintiff to the light-level

exertion set forth in the RFC to account for "the intermittently[-]noted weakness at 4/5 in the left lower extremity with intermittently[-]noted reduced range of motion of the spine, coupled with obese body habitus and reports of shoulder pain." (*Id.*) Next, the ALJ addressed Dr. Griffith's postural limitations and concluded that "greater postural limitations would be supported given [Plaintiff's] coexisting conditions, including reports of headaches and breathing deficits associated with asthma." (*Id.*) The ALJ also concluded that "[Plaintiff's] combination of conditions" warranted greater environmental limitations than opined to by Dr. Griffith. (*Id.*) The final sentence of this paragraph contains the omission, as the ALJ failed to clarify that the record supported "some" greater physical limitations. (*Id.*)

The undersigned agrees with Defendant's assertion about this issue: "[T]he ALJ clearly explained his finding regarding the exertional limitation[s] and still found Plaintiff more physically limited *in terms of postural and environmental limitations*." (Mem. In. Opp., Doc. No. 11 at PageID 2536-37 (emphasis added).) The ALJ's intended meaning is clear from the ALJ's analysis, and so the undersigned finds that the omission constitutes a harmless error.

For all of these reasons, the undersigned finds that substantial evidence supports the ALJ's findings and so the ALJ's decision should be affirmed.

**IT IS THEREFORE RECOMMENDED THAT**:

1.     Plaintiff's Statement of Errors (Doc. No. 9) be OVERRULED;

2.      The Court AFFIRM the Commissioner's non-disability determination; and

3.      The case be terminated on the Court's docket.

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days if this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).